# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:  )  | |
| ) | Chapter 7 |
| SCP OPERATIONS, LLC,  ) | |
| ) | Case No. 23-17436 |
| Debtor.  ) | |
| ) | Hon. Janet S. Baer |
| ) | |
| ) | |

**DECLARATION OF SHELLY A. DEROUSSE ON BEHALF OF**
**SMITH GAMBRELL & RUSSELL LLP, PROPOSED COUNSEL TO THE TRUSTEE**

I, Shelly A. DeRousse, hereby declare under penalty of perjury:

1. I am a partner in the Bankruptcy, Reorganization and Creditors' Rights Practice Group of the law firm of Smith Gambrell & Russell LLP ("SGR"), located at 311 South Wacker Drive in Chicago, Illinois. In that capacity, I am authorized to submit this Declaration, pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in support of the *Trustee's Application to Employ Shelly A. DeRousse and Elizabeth L. Janczak of Smith Gambrell & Russell LLP as Counsel* (the "Application") in the chapter 7 case of SCP Operations, LLC (the "Debtor").

2. I am duly admitted to practice law in the State of Illinois, the U.S. District for the Northern District of Illinois, and before this Court.

3. I make this Declaration from information derived from the business records of SGR. I will supplement this Declaration as required by Bankruptcy Rule 2014 if and when additional information becomes available concerning any relationship or connection between the Trustee, the Debtor's creditors or interest holders, and SGR based on information that comes to my attention.

**Qualification of Professionals**

4. SGR understands that the Trustee selected SGR as her counsel because of SGR's experience and knowledge in the fields of corporate reorganization and bankruptcy law under title 11 of the United States Code (the "Bankruptcy Code").

5. The firm has substantial experience in all manners of proceedings under chapter 7 and 11 of the Bankruptcy Code, having represented trustees, debtors, official committees of unsecured creditors, liquidating trustees and major creditors in numerous chapter 7 and 11 cases across the country.

**Services to be Rendered**

6. SGR contemplates that it will provide a full range of services required to represent the Trustee as counsel in the course of the chapter 11 case as counsel, which may include:

   a. Advising the Trustee on all legal issues as they arise;

   b. Advising the Trustee with respect to her rights and duties in this chapter 7 proceeding;

   c. Investigating and evaluating potential claims against the estate;

   d. Investigating estate causes of action including chapter 5 causes of action, and assisting the Trustee in filing and pursuing such actions;

   e. Filing such lawsuits as may be necessary to collect assets of the estate;

   f. Representing the Trustee in litigation matters arising from this chapter 7 proceeding;

   g. Evaluating claims filed against the estate, filing objections if necessary, and negotiating resolution of disputes with respect to such claims; and

   h. Performing such other legal services as may be required from time to time as may be necessary to protect the estate, including routine court appearances.

**Terms of Employment**

    A. **General Matters – Hourly Basis**

    7.    Subject to the Court's approval, SGR will charge the Trustee for its legal services on an hourly basis in accordance with its standard billing procedures except with respect to Chapter 5 Claims discussed below.

    8.    SGR is substantially discounting its standard billing rates for this representation. SGR's billing rates for attorneys expected to work on this case range from $475 to $580 per hour. Time devoted by paralegal professionals will be billed at $250 per hour.

    9.    The hourly rates for the SGR attorneys presently expected to have primary responsibility for this case are as follows: (i) Shelly A. DeRousse (Partner) - $580/hour; (ii) Adam Toosley (Partner) - $580/hour; (iii) Michael Desmond (Partner) - $545/hour; (iv) Elizabeth L. Janczak (Partner) - $535/hour; and (v) Shira Isenberg (Partner) - $475/hour. In addition, from time to time, it may be necessary for other SGR professionals to provide services to the Trustee. In all appropriate circumstances, SGR will employ the services of junior professionals in order to minimize administrative expenses to the estate. SGR's hourly rates are subject to yearly adjustment on November 1 of each year.

    10.    SGR will maintain detailed records of any actual and necessary costs incurred in connection with the aforementioned legal services. SGR intends to apply to the Court for compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, further orders of this Court, and the guidelines established by the Office of the United States Trustee for all services performed and expenses incurred.

11. SGR understands that, notwithstanding any Court-approved procedures for interim compensation and reimbursement of expenses, any and all compensation for legal services rendered and expenses incurred on behalf of the estate during the above-captioned case shall be subject to Court approval, after notice and a hearing. SGR further understands that the sole source of such compensation shall be from the Debtor's bankruptcy estate.

### B. Chapter 5 Claims – Contingency Fee

12. Subject to Court approval, SGR will charge a contingency fee for the pursuit, prosecution, and collection of causes of action under chapter 5 of the Bankruptcy Code ("Chapter 5 Claims"), as set forth in the Engagement Letter attached hereto as Exhibit 1, as follows:

- 30% of Gross Recoveries obtained prior to filing a lawsuit;
- 35% of Gross Recoveries obtained after filing a lawsuit, but prior to commencement of the earlier of either mediation or a trial; or
- 40% of Gross Recoveries obtained after the earlier of mediation or a trial.

Gross Recoveries shall mean any and all payments made to or for the benefit of the Debtor's estate by any person or entity for any settlement, judgment, or other resolution of a Chapter 5 Claim, including all cash and non-cash consideration actually received by the estate including but not limited to the value of any claim waiver obtained as part of any settlement.

13. SGR shall also be entitled to reimbursement of any reasonable expenses incurred, including but not limited to expert reports, filing fees, photocopy charges, travel expenses, court reporter services, deposition charges, witness fees, and forensic analyses, which shall be reimbursed in full by the estate in addition to the contingency fee regardless of the success of the Chapter 5 Claims.

### **SGR is a "Disinterested Person" Under Section 101(14) of the Bankruptcy Code**

14. To the best of my knowledge, neither I, SGR, nor any partner or associate thereof, insofar as I have been able to ascertain and except as set forth below: (a) hold or represent any interest adverse to the Debtor or its estate, largest creditors, or insiders; or (b) represent any other entity in connection with this case having an interest adverse to the Debtor. Further, insofar as I have been able to ascertain, other than in connection with this case or as set forth below, SGR has no connection (connection being defined as a familial or professional relationship) with the Debtor's creditors or any other party-in-interest herein, or their respective attorneys or accountants, or the United States Trustee or any person employed in the Office of the United States Trustee, except as set forth below. Accordingly, I believe SGR is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

15. In particular, SGR and/or its predecessor law firm Freeborn & Peters LLP represented Partisan Records, Associated Bank, N.A., and Oracle Corporation in the past for matters unrelated to this bankruptcy case. SGR represents Healogics, which is owned by Clayton, Dublier & Rice ("CDR"). CDR owns S&S Activewear. SGR represents Microsoft, which owns LinkedIn Corporation, but SGR does not represent LinkedIn Corporation. Microsoft has agreed to provide a waiver of conflicts of interest in an abundance of caution. SGR also currently represents Knitting Factory and other entities related to Partisan Records, but SGR does not represent Partisan Records. For matters related to LinkedIn Corporation and Partisan Records, SGR will set up a screen between attorneys working on matters for related entities and this engagement. If an actual conflict of interest arises related to bringing claims against LinkedIn Corporation, Partisan Records, or any other entity, SGR will advise the Trustee who will obtain conflict counsel.

16. Specifically, in reaching this conclusion, our staff has searched SGR's computerized "conflicts" database for each of the following entities: (a) the Trustee; (b) the Debtor; (c) the Debtor's insiders, including its directors and officers; (d) the Debtor's largest creditors; and (e) other parties-in-interest. SGR has represented, and may in the future represent, certain of the Debtor's creditors and other parties-in-interest, or interests adverse to such creditors or parties–in–interest, in matters unrelated to this case.

17. SGR is conducting a continuing inquiry to ascertain whether there exists any situation which would affect, or appear to affect, SGR's status as a "disinterested person."  If additional disclosure is required, I will promptly file a supplemental declaration with this Court after this inquiry is completed.

18. SGR has not entered into any arrangement to share any compensation that may be awarded by the Court, except as permitted under section 504(b) of the Bankruptcy Code.  SGR further states, in accordance with Bankruptcy Rule 5002, that no attorney is a relative of the bankruptcy judge assigned to the Debtor's case.

I state hereby under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated:  March 15, 2024                              /s/ Shelly A. DeRousse
                                                    Shelly A. DeRousse

6

# EXHIBIT 1

*311 South Wacker Drive*
*Suite 3000*
*Chicago, IL 60606*
*Tel: 312-360-6000*
*www.sgrlaw.com*



*Shelly A. DeRousse*
*Direct Tel: 312-360-6315*
*Direct Fax: 312-360-6520*
*sderousse@sgrlaw.com*

March 5, 2024

Via E-Mail

Gina B. Krol
1064 104th Street
Suite 100
Naperville, IL 60564
gkrol@cohenandkrol.com

    Re:    SCP Merchandising, LLC (case no. 23-17423), SCP Holdings, LLC (case no. 23-17434), and SCP Operations, LLC (case no. 23-17436) (collectively, the "Cases")

Dear Ms. Krol,

    Thank you for selecting Smith Gambrell & Russell LLP ("SGR") to represent you as counsel in your capacity as chapter 7 trustee (the "Trustee") in the above reference Cases of SCP Merchandising, LLC, SCP Holdings, LLC, and SCP Operations, LLC (the "Debtors") pending in the United States Bankruptcy Court for the Northern District of Illinois. The scope of our engagement will include general representation in the Cases on an hourly basis and the pursuit of the respective bankruptcy estates' claims under Chapter 5 of the Bankruptcy Code ("Chapter 5 Claims") on a contingency fee basis. The terms of our representation are ser forth in this letter (the "Agreement").

### Terms of Compensation

*Contingency Fee Based Services*

SGR will pursue Chapter 5 Claims on a contingency fee basis, as follows:

**1. Compensation**

SGR shall earn legal fees on a contingency fee basis of: (i) 30% of Gross Recoveries (defined below) obtained prior to filing a lawsuit; (ii) 35% of Gross Recoveries obtained

Gina B. Krol
March 5, 2024
Page 2

after filing a lawsuit, but prior to commencement of the earlier of either mediation or a trial; or (iii) 40% of Gross Recoveries obtained after the earlier of mediation or a trial.

If SGR is involuntarily terminated as counsel for the Trustee, any subsequent chapter 7 trustee, or the bankruptcy estates or if the bankruptcy case is dismissed or otherwise closed or terminated prior to the resolution of any of the Chapter 5 Claims, SGR will be compensated on an hourly basis for the work it performed related to the Chapter 5 Claims, after crediting any previously paid fees.

2. **Reimbursement of Expenses**

All reasonable expenses incurred by SGR, including but not limited to expert reports, filing fees, photocopy charges, travel expenses, court reporter services, deposition charges, witness fees, and forensic analysis, shall be reimbursed in full by the bankruptcy estates in addition to the Contingency Fee, regardless of the success of the Chapter 5 Claims.

*Gross Recovery*. "Gross Recovery" shall mean any and all payments made to or for the benefit of the respective Debtor's estate by any person or entity for any settlement, judgment or other resolution of the Chapter 5 Claims, including all cash and non-cash consideration actually received by the estate, including but not limited to the value of any claim waiver obtained as part of any settlement.

The Trustee acknowledges that SGR may earn substantially more than its normal hourly fees, and SGR acknowledges that it may earn substantially less than its normal hourly fees. SGR's contingent fee set forth in the Agreement is not set by law, but is negotiable between an attorney and client. You acknowledge and agree that in entering this Agreement, you knew that SGR's fee was not set by law, but was negotiable between SGR and you, and that, in fact, you and SGR knowingly and voluntarily negotiated the contingent fee set forth in the Agreement.

*Hourly Fee Based Services*

SGR shall provide legal work for the estates at the request of the Trustee, other than services related to pursuing the Chapter 5 Claims on an hourly fee basis (the "General Services") as follows:

1. **Compensation**

All General Services SGR provides to you shall be on an hourly basis. My time for this matter will be billed at $580 per hour, and the time for my partners Adam Toosley, Michael Desmond, Elizabeth Janczak, and Shira Isenberg will be billed at $580, $545, $535 and $475 per hour, respectively. Paralegals will be billed at approximately $250

Gina B. Krol
March 5, 2024
Page 3

per hour. As circumstances warrant, other attorneys or non-attorney professionals may also be assigned to work on this matter. We will endeavor to use junior professionals where practicable and most efficient for you in order to minimize our blended hourly rate. These rates are subject to periodic adjustment.

**2. Reimbursement of Expenses**

All reasonable expenses incurred by SGR shall be reimbursed in full, pursuant to order of the Bankruptcy Court, in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Rules of the Bankruptcy Court.

*Additional Terms of Engagement*

I will be your primary contact at SGR. SGR will maintain detailed records of all attorney and paraprofessional time spent on this engagement, as well as any actual and necessary costs incurred in connection with the aforementioned legal services.

Accompanying this letter is a memorandum that outlines SGR's other terms of engagement, which are subject to and may be modified by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the bankruptcy court's order approving our retention. If you have questions concerning any of the information presented here, or should you have a concern or question at any time during our representation, please call me. To confirm your assent with the terms of our representation, please sign the enclosed copy of this letter and return it to me.

This letter and SGR's retention are subject to the approval of the bankruptcy court.

Again, thank you for giving us the opportunity to serve you. We look forward to a long and mutually rewarding relationship.

Sincerely yours,

Smith Gambrell & Russell, LLP

Shelly A. DeRousse

Enclosure

Gina B. Krol
March 5, 2024
Page 4


AGREED TO AND ACCEPTED:

GINA B. KROL, AS CHAPTER 7 TRUSTEE

By: _____ trustee _____

Date: 3-6-24

## STANDARD TERMS OF REPRESENTATION

At Smith, Gambrell & Russell, LLP, we want each client relationship to be productive and satisfying for both parties. We believe one way to accomplish that goal is to explain at the outset the basis and manner in which we charge for our services and expenses.

Unless some other arrangement has been agreed upon with you, our practice is to submit monthly statements for services and expenses. This practice ensures that you have a current understanding of charges and expenses incurred. The work we have performed on your behalf will be described in the monthly statement.

### SERVICES

You will have an attorney who is responsible for each matter we undertake for you. In addition to serving as your primary contact and either performing or overseeing all services provided for you, this attorney will review and approve each statement you receive. The factors we consider in determining the amount of each statement for fees are:

The time and labor required for the work performed.

The experience and skill of the person performing the work -- normally this is reflected in our hourly rates.

Any special characteristics of the matter such as (a) the novelty or complexity of the work; (b) the extent to which we are able to utilize prior work product or experience to your significant advantage; and (c) time constraints imposed by the nature of the work.

The results achieved and the overall value of our work. If we have played a material role in obtaining a result for you with benefits which are disproportionate to our time charges, we may at the end of a particular undertaking request a fee which exceeds our hourly charges in order to reflect more fairly the value of our services. In such event, we would discuss with you the fee proposed to be charged.

### EXPENSES

You also will be invoiced for direct expenses incurred in the course of providing legal service to you, such as photocopying, research, couriers and secretarial/word processing overtime.

At Smith, Gambrell & Russell, LLP, we make every effort to add expenses we have paid on your behalf to your bill with no mark-up for handling, and no surcharge for the cost of carrying the charge until payment is made by you. Thus, filing fees, incorporation fees, charges from court reporters, and similar expenses will appear on your bill at the amount actually disbursed by us on your behalf.

You will be asked to pay directly certain larger expenses, such as consultants, court reporters, expert witness fees and charges for volume copying that are invoiced by persons or companies outside our firm for your account.

In an effort to control the quality, timeliness of performance and cost of support services, we have acquired equipment and created service centers within the firm to provide or to assist in providing certain support services for clients. Where necessary or appropriate, we also use the services of outside suppliers of services in combination with our own staff. In those situations where our staff performs or participates in the performance of services or our equipment is utilized in connection with those services, we bill clients' expenses in amounts which take into account the cost to us of the involvement of our staff and use of our equipment. Overall it is our intent to provide the highest possible quality support service and to comply with the timeliness and confidentiality requirements of clients.

Several categories of expenses involving a service provided, in whole or in part, using our equipment or staffed with our people, deserve further comment. In these cases we take into account certain costs reasonably allocable to the service performed in addition to direct payments to employees and vendors. We have made it a priority to monitor the cost of expenses incurred on our clients' behalf, and to maintain the most cost-effective environment possible, while still ensuring high quality, efficiency and confidentiality for our clients. We regularly examine our costs, and will notify you of any changes in the following.

Photocopying. We charge 15¢ per page for photocopying (75¢ per page for color copies). In arriving at an appropriate charge, we have taken into account not only the direct cost of materials, photocopying equipment leased through an outside vendor (including personnel who do and supervise the photocopying), as well as some cost attributable to equipment maintained to keep track of copies we make for you. We recognize that our charge of 15¢ per copy is more than per copy costs for routine jobs at some copy centers to which documents may be delivered, but there are many benefits to you such as efficiency and confidentiality, when we do the copying for you in-house. We commonly send large uncomplicated copy projects to outside copy facilities when timeliness and confidentiality permits. We are always happy, upon your request and where appropriate, to send materials to you for copying or to send materials to be copied to outside vendors who will bill you directly.

Telephone Charges. We will bill as an expense item charges for international long distance telephone charges. We reserve the ability to also bill domestic long distance telephone charges.

Messengers. We do not charge for messengers based on a cost calculation. Rather, our messenger charge is what we are charged by outside providers for the service plus a $5 charge for dispatching, coordinating and tracking the deliveries via various courier services. In order to keep our costs low, we maintain only very limited in-house courier support. In the instances we can utilize our own courier, we pass along to you a reasonable charge for their work. Normally,

courier work performed by our staff is charged to you at a rate lower than that charged by outside providers, usually $5 plus mileage.

Computerized Legal Research. We receive monthly billings from the providers of computerized legal research (e.g., Lexis and Westlaw, etc.) for use of those services. We pass along to you the direct charge for the computer time incurred on your behalf, plus an adjustment representing our cost of providing in-house computer equipment, dedicated telephone lines, access software and other equipment and access charges dedicated to computerized legal research. Our experienced research staff operates in the most efficient, yet thorough, manner possible. Whenever possible, we take advantage of promotional or training time that is provided at no charge to us by the legal research providers.

Overnight Couriers. We primarily use Federal Express for the bulk of our overnight courier services because of a favorable discount. We add 8% to the Fed Ex rate to cover our costs to maintain computerized equipment and telephone lines for these services as well as personnel who send and track these overnight packages.

Secretarial Overtime. When secretarial/document production overtime is necessary to meet your (not our) needs that cannot be met within normal working hours, we will charge you for our overtime expense. In most instances, this is calculated at $64 per hour - Atlanta, $62 per hour - New York and DC, and $50 per hour - Jacksonville. Overtime worked by a few individuals whose earnings warrant is charged at $70 per hour.

We receive some discounts because of Smith, Gambrell & Russell, LLP's general volume use of certain services and we generally pass along to you at least half the discount we receive whenever possible. When a special discount is obtained by reason of the use of a service solely on your behalf, those special discounts are passed along to you in their entirety.

Our responsibility is to make sure that you receive a complete, accurate, and fair monthly statement. We strongly encourage you to raise promptly with us any questions or comments you may have regarding any statement. In return, we expect payment of our statements within 30 days of receipt. If your account is not kept current we must reserve the right to terminate our representation in accordance with applicable ethical rules.

### **Our Attorney-Client Relationship**

We appreciate the opportunity to serve as your attorneys. We believe that it helps to strengthen the attorney-client relationship for us to set out at the beginning of that relationship the principles that will govern it.

1. *Client Responsibilities.* You agree to cooperate fully with us and to provide promptly all information known or available to you relevant to our representation. You agree to maintain contact with us during the course of the representation.

2. *Termination.* Either of us may terminate the engagement at any time for any reason by written notice, subject on our part to applicable rules of professional conduct. In the event that we terminate the engagement, we will take such steps as are reasonably practicable to protect your interests in the above matter. If permission for withdrawal is required by a court, we will promptly apply for such permission, and you agree to engage successor counsel to represent you.

3. *Conclusion of Representation; Retention and Disposition of Documents.* Unless previously terminated, our representation of you will terminate upon our sending you our final statement for services rendered in this matter. Following such termination, any otherwise nonpublic information you have supplied us which is retained by us will be kept confidential in accordance with applicable rules of professional conduct. At your request, your papers and property will be returned to you promptly upon receipt of payment for outstanding fees and costs. Our own files pertaining to the matter will be retained by the firm for a period of five years. These firm files include, for example, firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records; and internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers. All such documents retained by the firm will be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials retained by us within a reasonable time after the termination of the engagement, usually five years.

4. *Post-Engagement Matters.* You are engaging the firm to provide legal services in connection with a specific matter. After completion of that matter, changes may occur in the applicable laws or regulations that could have an impact upon your future rights and liabilities. Unless you engage us after completion of the matter to provide additional advice on issues arising from the matter, the firm has no continuing obligation to advise you with respect to future legal developments.

5. *Conflicts.* The firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future clients will have disputes or transactions involving you. You agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for you even if the interests of such clients in those other matters are directly adverse. We agree, however, that your prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage.